IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA )   )   v.                                                                 )         CRIMINAL NO. 2:17cr135   )   ALLANTE MARTANAZE ARRINGTON,       )   )   Defendant.                                          ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS AND MOTION FOR ADDITIONAL ONE-LEVEL REDUCTION

The United States of America, by Tracy Doherty-McCormick, Acting United States Attorney, and David A. Layne, Special Assistant United States Attorney offers this position paper regarding the sentencing factors contained in 18 U.S.C. § 3553(a).  The government has no objection to the content of the Presentence Investigation Report (PSR).  According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") is 18-24 months' imprisonment.

Based on the nature and circumstances of the offense, the defendant's characteristics, and taking into account all relevant conduct attributable to the defendant, the United States respectfully submits that a term of incarceration of no more than 18 months, and one year of supervised release is sufficient, but not greater than necessary, to accomplish the goals set out in 18 U.S.C. § 3553(a).

### I.     MOTION FOR ADDITIONAL ONE-LEVEL REDUCTION

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b), to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility.

The defendant assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting all parties to allocate their resources efficiently.  This one-level reduction in the defendant's offense level is reflected in the PSR.

## II.     BACKGROUND

On September 20, 2017, a Federal Grand Jury in the Eastern District of Virginia, returned a six-count Indictment charging the defendant, ARRINGTON, with six counts of Maliciously Conveying False Information, in violation of 18 U.S.C. § 844(e).  On September 22, 2017, the defendant made his initial appearance, where the Court appointed counsel and placed him on personal recognizance bond with conditions.  On November 22, 2017, the Defendant entered a plea of guilty to Count One of the Indictment, pursuant to a written plea agreement. *See* Plea Agreement, ECF No. 17.  The matter was then continued pending the completion of a PSR.  Since his initial appearance, ARRINGTON has remained on bond, and in compliance with all the terms and conditions of that bond.

## III.    STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264.  The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 S. Ct. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 564.  Finally,

in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 596-97.  The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

**IV.**     **POSITION ON SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court must consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need

3

to provide restitution to any victims of the offense. The government addresses the most relevant of these factors below.

### A. Nature and Circumstances of the Offense

The Naval Criminal Investigative Service (NCIS) identified ARRINGTON in an investigation into numerous bomb threats made to various buildings and naval assets aboard Joint Expeditionary Base Little Creek-Fort Story (JEBLCFS) in August 2017. JEBLCFS received upwards of 12 threatening communications over August 2, 2017, and August 17, 2017. *PSR* ¶ 6, 8, 9. The threats were directed at JEBLCFS itself, gyms aboard the installation, and at several ships in port at the installation. *PSR* ¶ 6. The threats themselves were brief, and often vague.

NCIS investigated the source of the calls by requesting emergency disclosures from Verizon for the timeframes associated with the calls, and for the specific locations receiving threats. *Id.* Verizon is the service provider for all incoming call data to JEBLCFS, and their data revealed that a T-Mobile customer was the source of the calls made to the various locations, at the times in question. *Id.* Accordingly, NCIS pursued emergency disclosures from T-Mobile, again limited to the timeframes of the threatening calls, and to the locations receiving the calls. *Id.* T-Mobile's data revealed a single phone number as the source of the threatening communications, and revealed an international mobile equipment identity (IMEI) number for the specific device making the calls. *Id.* T-Mobile also revealed that the calls were made using the *67 feature prior to dialing. *Id.* This feature prevents caller information from showing on a receiver's display. *Id.* A subpoena for subscriber information associated with the subject phone number and IMEI number revealed that the account and device belonged to ARRINGTON.

NCIS further identified ARRINGTON as a sailor aboard one of the ships receiving a bomb threat while in port at JEBLCFS.

As the PSR notes, ARRINGTON's actions caused a considerable disruption to operations at JEBLCFS. *PSR* ¶ 10.  While ARRINGTON does not seem to have had any desire or capability to carry out these threats, U.S. Navy security personnel were forced to expend significant resources in responding to each call.  Military Working Dogs and handlers conducted protective sweeps of each threatened location.  *Id.*  The Navy issued Shelter-in-place orders, and a FBI bomb technician was called in to assist in the response.  *Id.*  For hours, operations at JEBLCFS were interrupted as a direct result of ARRINGTON's actions.

If the facts of this case involved a single threatening call, on a single day, one could characterize the matter as a Sailor simply acting out.   Here, the Court is presented with a defendant calling-in upwards of 12 threats over two days, and with a motivation completely unknown.  Whatever ARRINGTON's motives, however, his actions suggest a troubling compulsion.  That ARRINGTON took steps to cover his tracks shows a clear deliberative process, and understanding of the wrongfulness of his actions.

**B.    Defendant's History, Characteristics, and Need for Treatment**

ARRINGTON has no significant criminal history.  His family background and upbringing were stable.  ARRINGTON enjoyed a good childhood in Cleveland, Ohio with his father, mother, and siblings. *PSR* ¶ 35.  His parents provided well for him, and emphasized education while growing up.  *Id.*  ARRINGTON still enjoys the support of his family throughout the instant experience.  *Id.*

ARRINGTON has been a Sailor in the U.S. Navy since 2014. His experience in the Armed Forces seems to have been smooth until the instant offense. *Id.* at ¶ 44-5. ARRINGTON is married, thought separated from his wife, and has a 2 year-old daughter for whom he provides. *Id.* at ¶ 38.

Based solely on ARRINGTON's lack of criminal history, and his stable background, he appears to be a low risk to reoffend. However, his background sheds no light on what drove him to such perplexing behavior as that which brings him before the Court. A significant period of incarceration will serve to allow the defendant, perhaps with the assistance of professionals, to assess what prompted such impulsive, and damaging behavior.

### C. Need to Deter Future Criminal Conduct

The defendant's sentence must accomplish the goals of deterring the defendant from engaging in future criminal conduct, and deterring others from similar conduct. The government avers that, with an appropriate punishment including a significant period of incarceration, ARRINGTON will be sufficiently deterred from future criminal conduct. Of equal importance is the fact that a significant sentence will send the message to others that ARRINGTON's behavior, and its resultant impact on the Navy, is simply intolerable, particularly in this day and age.

## V.     CONCLUSION

Taking into account the factors set forth in Section 3553(a), the government submits that a sentence of 18 months imprisonment and one year of supervised release is sufficient and appropriate in this case.

Respectfully submitted,

TRACY DOHERTY-MCCORMICK
ACTING UNITED STATES ATTORNEY

By:     _____/s/_____
David A. Layne
Special Assistant United States Attorney
Colorado State Bar No. 47989
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number - 757-441-6331
E-Mail Address – david.layne@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of February, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

    Megan M. Durkee, Esquire
    150 Boush Street
    Suite 403
    Norfolk, Virginia 23510
    (757) 457-0800

I further certify that on this 22nd day of February, 2018, I caused a true and correct copy of the foregoing Position of the United States with Respect to Sentencing Factors to be e-mailed to the following:

    Karen R. Franklin
    Senior United States Probation Officer
    827 Diligence Drive
    Suite 210
    Newport News, Virginia 23606

                                                _____/s/_____
                                                David A. Layne
                                                Special Assistant United States Attorney
                                                Colorado State Bar No. 47989
                                                United States Attorney=s Office
                                                World Trade Center, Suite 8000
                                                101 W. Main Street
                                                Norfolk, Virginia 23510
                                                Office Number - 757-441-3221
                                                E-Mail Address – david.layne@usdoj.gov